UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                          :        Chapter 13

SUSAN A.R. DUNLOP                                 :

      Debtor                                      :        Bankruptcy No. 07-14862bf

................................................

MEMORANDUM

................................................

Presently before me is a motion filed by Central Penn Property Services, Inc. to dismiss this bankruptcy case with a 180 day bar against future filings. Alternatively, Central Penn Property Services seeks relief from the bankruptcy stay as well as relief from the co-debtor stay pursuant to 11 U.S.C. § 1301(c), in order to prosecute an ejectment action against the debtor and her husband pending in state court.

In her response in opposition to this motion, the debtor clearly opposes dismissal of her case. Answer, ¶ 3. She concedes, however, that relief from the bankruptcy stay may be warranted:

> The only relief which may be appropriate is allowing the Movant to proceed with the Ejectment action, which the Debtor and her husband will vigorously defend if relief from their automatic stay is granted.

Answer, ¶ 6.

After an evidentiary hearing, the following facts were proven.

I.

The debtor, Susan A.R. Dunlop, is married to James Scott Dunlop. They reside, along with their two minor daughters and the debtor's grandmother, at 445 Devon State Road, Devon, Pennsylvania. On January 19, 2005, Mrs. Dunlop filed her first chapter 13 petition, docketed at Bankr. No. 05-10798. Ex. M-6. This petition was dismissed on February 11, 2005 due to the debtor's failure to file all required bankruptcy documents. Id.

The debtor filed her second chapter 13 petition on April 13, 2005, docketed at Bankr. No. 05-15175. Ex. M-7. Even though she was granted an extension of time to do so, the debtor failed to file her bankruptcy schedules, statement of financial affairs and chapter 13 plan. Again, her case was dismissed on May 24, 2007. Id.

In early 2006, the Devon realty was owned solely by the debtor and had two mortgage liens against it. The first mortgagee, Countrywide Home Loans, Inc., filed a complaint in mortgage foreclosure in the Chester County Court of Common Pleas, docketed at No. 06-02101. See Ex. M-2. Judgment in foreclosure was thereafter entered against Mrs. Dunlop, and a writ of execution was issued on May 1, 2006. Ex. M-1. On September 21, 2006, the Devon property was sold by the Sheriff of Chester County to Central Penn Property Services, Inc., which bid $366,000 for the realty. Ex. M-1.

On November 29, 2006, the Sheriff conveyed the Devon property to Central Penn Property Services by deed poll, which deed was recorded that day. Id. Prior to that date, Mrs. Dunlop had filed a petition in state court to set aside the sheriff sale held in September 2006, based upon improper service, failure to comply with a state consumer

protection statute, failure to properly notify the second mortgagee, L.E.M. Financial Corp., and due to a grossly inadequate sale price. Ex. M-2.[1] That petition was denied by the state court on December 13, 2006. Id.[2] The debtor's motion for reconsideration of the December 13th order was denied on June 19, 2007. Ex. M-3.

On December 22, 2006, less than two weeks after the state court denied Mrs. Dunlop's petition to set aside the foreclosure sale to Central Penn Property Services, the debtor's husband filed his own chapter 13 petition, docketed at Bankr. No. 06-16044. Ex. M-8. That chapter 13 case, in which Mr. Dunlop was represented by the same attorney as now represents Mrs. Dunlop, was dismissed on February 22, 2007, because Mr. Dunlop never filed his bankruptcy schedules, statement of financial affairs or chapter 13 plan, despite an extension of time within which to do so. Id.

Prior to dismissal, Penn Central Property Services, sought and was granted relief from the bankruptcy stay, on January 24, 2007, to proceed with an ejectment action concerning the Devon property. Also prior to dismissal, on January 9, 2007, Mr. Dunlop removed from state court to bankruptcy court the ejectment action then pending. Ex. M-8, docket entry #12. Court records in that case—of which I shall take judicial notice

---

[1] While that petition to set aside the foreclosure sale was pending, Central Penn Property Services and Countrywide Home Loans, Inc. entered into an agreement whereby the latter consented to the Sheriff returning more than $300,000 of the auction price to the purchaser, pending the outcome of the debtor's petition. If the petition to set aside the sale were denied, then Central Penn Property Services was obligated to repay the Sheriff the refunded portion of the price. Ex. D-1. This agreement was approved by the state court. Id. Apparently, Central Penn Property Services repaid the full auction price to the Sheriff.

[2] The state court adjudication makes no mention of any allegation in the petition to set aside the foreclosure sale that Mr. Dunlop, rather than Mrs. Dunlop, was the owner of the realty at the time of foreclosure. As will be discussed in the text, a copy of the actual petition is part of the record in Mr. Dunlop's own bankruptcy case.

3

under Fed. R. Bankr. P. 9017, incorporating inter alia, Fed. R. Evid. 201, see generally Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995)—contain the state court ejectment pleadings up to the time of removal.  The petition to set aside the sale filed in state court did not assert that Mrs. Dunlop was not the record owner of the Devon realty.  The January 9, 2007 removal notice, however, alleged that Mr. Dunlop was "presently the sole owner" of that property.[3]

When Mr. Dunlop's chapter 13 case was dismissed on February 22, 2007, the bankruptcy court marked the removed litigation dismissed.  See generally In re Smith, 866 F.2d 576, 580 (3d Cir. 1989) ("As a general rule, the dismissal of a bankruptcy case should result in the dismissal of 'related proceedings' because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings.").  Apparently, that litigation returned to state court, for on July 26, 2007 the state court overruled Mrs. Dunlop's preliminary objections to Penn Central Property Service's amended ejectment lawsuit.  Ex. M-4.  The ejectment lawsuit is still pending.

---

[3]Although I express no position regarding the debtor's position concerning the propriety of the foreclosure sale, I am aware of the reported decision, Philadelphia National Bank v. Farrier, 46 Pa. D. & C.3d 657, 1988 WL 151238 (Pa. Com. Pl. 1988).  In Farrier a Philadelphia trial judge interpreted the pleading requirements of Pa. R. Civ. P. 1144 in the following manner: An entity who receives a quitclaim deed from the record owner/mortgagor one day after service of the foreclosure complaint is not a necessary party to a foreclosure action, because the transferee has no liability on the mortgage.  Id. at 661.  The Farrier court also stated that, under Pennsylvania law: "[I]t has been held that the alleged purchaser from the registered owner of the mortgaged premises who holds an unrecorded agreement of sale is not a 'real owner' of the mortgaged property."  Id. at 661; see also 22 Standard Pennsylvania Practice 2d § 121:49 (2003) ("The alleged purchaser from the registered owner of the mortgaged premises, who holds an unrecorded agreement of sale is not a 'real owner' of the mortgaged property.") (citing Bradley v. Price, 396 Pa. 234 (1959)).

4

On August 24, 2007, Mrs. Dunlop filed the above-captioned chapter 13 petition, her third such filing. In her bankruptcy schedules she disclaims ownership of the Devon realty, asserting that the property was transferred to her husband and sold at sheriff sale. See Bankruptcy Schedule A filed on September 7, 2007.[4] Her personal property on Schedule B is valued at about $8,000, although some assets are stated to have unknown value. The debtor lists two secured creditors on Schedule D allegedly holding a security interest in the Devon realty: Countrywide Home Loans (the former first mortgagee) in the amount of $235,000 and Solvers CM 21, purportedly owed $650,000.[5] Insofar as unsecured debts are concerned, she lists about 40 creditors allegedly owed more than $433,000.[6]

Her income disclosure, Schedule I, reports that she is unemployed and receives social security benefits of $1,400 per month for her grandmother, and $500 per month as a gift from her mother. Mr. Dunlop is listed as unemployed and having no income. Schedule J, her list of monthly expenses, are purported to total $1,875, leaving $25 per month to fund a chapter 13 plan. No housing expense is included. Indeed, she has tendered no rent or any other funds to Central Penn Property Services since the foreclosure sale took place.

---

[4] I also take judicial notice, under Fed. R. Evid. 201, of the debtor's bankruptcy schedules in this case.

[5] Exhibit M-5, the debtor's proposed chapter 13 plan, identifies Solver's as an entity owned by the "Debtor's family." Since the debtor disclaims ownership of any realty, it is not clear why she lists two secured creditors, with the Devon realty as collateral.

[6] There was no evidence by which I can determine the validity of these claims. For example, Schedule F lists an unsecured personal loan debt for $108,220 to "Wayne and Cathy." No last names, no address, no date the debt was incurred are provided for these creditors.

5

Finally, the debtor has filed a proposed chapter 13 plan. Ex. M-5. In relevant part, this plan provides:

> 2. The Debtor shall submit to the supervision and control of the Trustee payments in the amount of $20 monthly until the refinancing described in paragraph 3 of the plan takes place.
>
> 3. The Debtor and her husband will continue to attempt to negotiate a resolution with the buyer at the sheriffs sale to recover their home located at 445 Devon State Rd., Devon, PA. 19333 ("the Home"). As an aspect of a resolution with the buyer or as a mean of retaining possession of the Home, the Debtor will refinance the Home. Upon the refinancing of the Home, the Debtor will pay in full the mortgages which existed prior to the sale and an amount to the buyer pursuant to the terms of any settlement reached.
>
> 4. The various claims of the Debtor's creditors are classified in this Plan as follows:
>> A. Class One: Claims filed and allowed which are entitled to priority. These Claims include remaining attorneys' fees and the Trustee's commissions.
>>
>> B. Class Two: The secured claim of Countrywide Home Loans ("Countrywide") against the Home. These claims will be paid in full with the proceeds of the refinancing.
>>
>> C. Class Three: The secured claim of Solvers, Ltd. against the Home. This entity is owned by the Debtor's family, and will not be treated in the plan.
>>
>> D. Class Four: All other claims against the Debtor that are timely filed and ultimately allowed.
>
> 5. The payments received by the Trustee from the Debtor shall be distributed first to allowed Class One claims until they are paid as indicated in full, and, after the refinancing is consummated, to the Class Two claimant to pay that party in full as well. Any remaining sums will be paid to Class Four claimants pro rata[.]

Ex. M-5, ¶¶ 2-5.

Despite the provision in the plan involving negotiations with the sheriff sale purchaser of the Devon realty, the debtor and her husband both testified that Central Penn Property Services has declined to negotiate the resale of the Devon property to the debtor, her husband, or any other relative.

II.

A.

I turn first to Central Penn Property Service's request to terminate the bankruptcy stay, as it is possible that the debtor does not seriously contest such relief.

In general, under Pennsylvania law, ejectment proceedings are "the classic method of determining title to real estate." Teacher v. Kijurina, 365 Pa. 480, 484 (1950). The distinction between "quiet title" actions and "ejectment" was explained in Sutton v. Miller, 405 Pa. Super. 213 (1991). When a plaintiff has possession of realty and the defendant is out of possession, a quiet title action may be brought to resolve the issue of proper ownership. But when the plaintiff is out of possession, he must bring an ejectment action to determine his ownership rights.[7] Id. at 223-24; accord, e.g., Siskos v. Britz, 567

---

[7]There is an exception in Pennsylvania law to this general principle. An ejectment action is proper only if the plaintiff has a right to immediate possession of realty. If a plaintiff is out of possession and has no right to immediate possession, he may assert a quiet title action to establish an ownership interest in the realty:

> Ordinarily, the plaintiff in an action to quiet title must be in
> (continued...)

7

Pa. 689, 699 (2002) ("Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession."); Federal Realty Investment Trust v. Juniper Properties Group, 2000 WL 424287, at *6 (E.D. Pa. 2000); see also Roberts v. Estate of Pursley, 700 A.2d 475, 480 (Pa. Super. 1997):

> The only questions at issue in the prior Action to Quiet Title should have been: (1) whether appellees are in possession; (2) whether a dispute as to title exists; and (3) whether an order should be issued on appellants compelling them to file an action in ejectment. Schimp v. Allaman, supra at 235, 509 A.2d at 424. The issues applicable to an Action in Ejectment are significantly different. "Ejectment is a possessory action wherein a plaintiff must prove the right to exclusive possession vis-a-vis proof of paramount title." Sutton v. Miller, supra at 225, 592 A.2d at 89 (citing Doman v. Brogan, 405 Pa. Super. 254, 263, 592 A.2d 104, 108 (1991)).

Here, Central Penn Property Services claims a right under Pennsylvania law to immediate possession based upon the conveyance of a sheriff's deed to the Devon

---

[7](...continued)
possession of the land in controversy; if he is out of possession, his sole remedy is an action in ejectment. . . . However, the rule requiring that plaintiff be in possession to bring an action to quiet title is not absolute. . . . An action to quiet title may be brought only where an action in ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land. . . . Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land. See Pa. R.C.P. 1061(b)(2) provides that an action to quiet title may be brought where an action of ejectment will not lie. Therefore, where an action of ejectment is not available an action to quiet title may be maintained.

Federal Realty Investment Trust v. Juniper Properties Group, 2000 WL 424287, at *6.

property. It has commenced an ejectment action to gain such possession and preliminary objections to the complaint have been denied by the state court.

The Third Circuit Court of Appeals has held that a debtor's mere right of possession, even without any claim of title, is protected by the automatic stay arising from section 362(a). In re Atlantic Business & Community Corp., 901 F.2d 325, 328 (3d Cir. 1990); see In re 48th Street Steakhouse, Inc., 835 F.2d 427 (2d Cir. 1987), cert. denied, 485 U.S. 1035 (1988). Thus, Central Penn Property Services must obtain relief from the bankruptcy stay in order to evict the debtor—that is, to oust her from possession. See In re Atlantic Business & Community Corp., 901 F.2d at 328.

As a general principle, whether to terminate, modify, condition, or annul the bankruptcy stay under section 362(d)(1), for "cause," is committed to bankruptcy court discretion, see, e.g., In re Sonnax Industries, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990); Matter of Holtkamp, 669 F.2d 505 (7th Cir. 1982); In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986), and is to be determined by examining the totality of the circumstances. See Matter of Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985), aff'd, 781 F.2d 973 (2d Cir. 1986).

Although the debtor currently is in possession of the Devon realty, possession by a debtor alone, without any right of ownership or contractual right to possession, is not protected to any great degree by the bankruptcy stay. Relief from the stay is typically granted to the owner, or a secured creditor of the owner, when the debtor has no right to possession. See In re Moore & White Co., Inc., 83 B.R. 277, 281 (Bankr. E.D. Pa. 1988). Embedded in the concept of "cause" for relief from the bankruptcy stay is the issue of whether there is some legitimate purpose to be served in bankruptcy by

keeping the debtor in possession. See generally First National Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir. 1991) (mortgagee properly granted relief from stay when chapter 13 filing occurred after foreclosure judgment because, under bankruptcy law in effect at that time, the debtor/homeowner was unable to use chapter 13 to cure the mortgage default); In re Halley, 70 B.R. 283 (E.D. Pa. 1987) (when mortgage loan matured prepetition, chapter 13 plan may not cure loan default and thus relief from the stay should be granted).

If bankruptcy serves no legitimate purpose in retaining the debtor's possession, then the property owner should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor. See, e.g. In re Moore, 267 B.R. 111, 117-18 (Bankr. E.D. Pa. 2001). Thus, if a foreclosure sale takes place prepetition, a chapter 13 debtor has no right to cure or reinstate her mortgage under Pennsylvania law. See In re Brown, 75 B.R. 1009 (Bankr. E.D. Pa. 1987); In re Rouse, 48 B.R. 236 (Bankr. E.D. Pa. 1985). Nor, after such a sale, does she have any right to cure a prepetition mortgage default in a chapter 13 proceeding under federal bankruptcy law. 11 U.S.C. § 1322(c)(1). In such circumstances, i.e., where a pre-bankruptcy sale has already occurred, courts have routinely held that relief from the bankruptcy stay generally is appropriate so the buyer may eject the debtor. See, e.g., In re Moore, 267 B.R. at 117-18; In re Belmonte, 240 B.R. 843, 854 (Bankr. E.D. Pa. 1999) (when debtor's ownership interests in realty were terminated prepetition and the chapter 13 case cannot restore those rights, cause exists to terminate the bankruptcy stay), rev'd in part, 279 B.R. 812 (E.D. Pa. 2001); In re Yorke, 1996 WL 509614, at *2 (Bankr. E.D. Pa. 1996) ("Since the Debtor lacks title to her Home . . . she cannot propose a viable plan to cure arrears on, or liquidate, that mortgage. Since she cannot confirm a plan achieving

10

these ends, the Bank is entitled to relief, pursuant to 11 U.S.C. § 362(d)(1), on its Stay Motion"); In re Brown, 75 B.R. at 1009 (stay lifted when bankruptcy filed after foreclosure sale).

Here, the state court has upheld the September 2006 foreclosure sale, rejecting the debtor's challenge to it by orders dated December 13, 2006 and June 19, 2007. This federal bankruptcy court has no jurisdiction to overturn such adjudications:

> The bankruptcy court is also prohibited from reviewing the state court's judgment by the Rooker-Feldman doctrine, which prohibits lower federal courts from sitting as effective courts of appeal for state court judgments. See, e.g., D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)); Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1496 (5th Cir. 1993) ("The Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]") (quoting In re G & R Mfg. Co., 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)).

In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) (parallel citations omitted); accord, e.g., In re Knapper, 407 F.3d 573 (3d Cir. 2005).[8]

Furthermore, the debtor does not consider Central Penn Property Services a creditor, as this entity was simply a purchaser at the auction sale and was never a mortgagee. Thus, the movant is not listed in the debtor's schedules as a creditor. Accordingly, her proposed chapter 13 plan does not provide for payments to the property owner. The proffered plan calls only for negotiations to repurchase the property;

---

[8]Moreover, an adverse adjudication of a petition to set aside a foreclosure sale would be entitled to preclusive effect in the state court system. See Creciun v. McCann, 165 Pa. Super. 313, 315 (1949); Miller v. Dierken, 157 Pa. Super. 69 (1945).

11

however, Central Penn Property Services has no desire to negotiate, nor can it be compelled to do so.

The prepetition rulings of the state court, along with the terms of the debtor's proposed chapter 13 plan as they concern Central Penn Property Services, renders inappropriate the continuation of the bankruptcy stay regarding the Devon realty. Therefore, it is appropriate to terminate the bankruptcy stay under section 362(d)(1),[9] and allow the parties to exercise whatever rights they may have under Pennsylvania law.[10] See In re Cohoes Industrial Terminal, Inc., 70 B.R. 214 (S.D.N.Y. 1986) (relief from stay was warranted in favor of the lessor when the debtor/tenant's right to possession had been extinguished pre-bankruptcy by state court order), aff'd, without op., 831 F.2d 283 (2d Cir. 1987). In reaching this conclusion, I express no position on the underlying merits of any ownership dispute involving the Devon realty.

B.

The movant also seeks relief from the bankruptcy stay as to Mr. Dunlop, the debtor's spouse. In general, the automatic stay found in section 362(a) only enjoins creditors from proceeding against debtors; it does not bar any action against a non-debtor.

---

[9]By granting relief under section 362(d)(1), I need not consider whether the provisions of section 362(d)(4) apply under these facts.

[10]In fairness, I shall also lift the stay in favor of the debtor so that she may defend the ejectment action against her. As the defendant in state court litigation, the bankruptcy stay binds her as well. See, e.g., Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446 (3d Cir. 1982) (bankruptcy stay applies to litigation in which the debtor is a defendant, even as to actions raised by the debtor in his defense).

12

See, e.g., McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 509-10 (3d Cir. 1997); Fanning v. Black & Decker, Inc., 1999 WL 163628, at *2 (E.D. Pa. 1999); In re Aldan Industries, Inc., 2000 WL 357719, at *3 (Bankr. E.D. Pa. 2000). An exception to this general principle is found in chapter 13 cases. With a number of qualifications, section 1301(a) stays a creditor from litigation and collection activities against a co-debtor of the debtor on a "consumer debt."

The term "consumer debt" is defined by section 101(8) as a "debt incurred by an individual primarily for a personal, family, or household purpose." Moreover, according to its legislative history, the co-debtor stay found in section 1301(a) "'[was] designed to protect a debtor operating under a Chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor.'" In re Patti, 2001 WL 1188218, at *3 (Bankr. E.D. Pa. 2001) (quoting H.R. Rep. No. 95-595, at 426 (1995)), aff'd, 304 B.R. 182 (E.D. Pa 2003).

Here, there was never any loan agreement between the Dunlops and Central Penn Property Services. Although it has not asserted an in personam or damage claim in either state court or this court, the movant argues through counsel that it holds a damage claim under Pennsylvania law against the Dunlops for the wrongful possession of its property, including fair rental value, property taxes and insurance. Whether state law provides for such a claim and, if so, whether this claim would fall within the scope of section 1301 as a jointly held consumer debt, I need not now decide. See generally In re Wyatt, 6 B.R. 947, 952 (Bankr. E.D.N.Y. 1980) (constructive trust action not within the scope of section 1301).

If the co-debtor stay found in section 1301 does not apply, the movant can prosecute its ejectment action against Mr. Dunlop, as the automatic stay found in section 362(a) is not relevant. If section 1301 were to apply, then section 1301(c) states:

> (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section [1301] with respect to a creditor, to the extent that--
>
> (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
>
> (2) the plan filed by the debtor proposes not to pay such claim; or
>
> (3) such creditor's interest would be irreparably harmed by continuation of such stay.

Thus, relief from the co-debtor stay is warranted whenever any of the three provisions of section 1301(c) are applicable.

In this contested matter, Central Penn Property Services could prevail on at least two of the three grounds listed in section 1301(c). If it has a damage claim for wrongful possession against the Dunlops, the debtor's proposed chapter 13 plan does not provide for payment of such claim. Moreover, continuation of the stay on these facts—wrongful possession and non-payment for the use of the realty—would irreparably harm the movant.

Accordingly, the movant will be authorized to proceed in its ejectment action against Mr. Dunlop.

III.


Insofar as dismissal of this case is concerned, Central Penn Services, Inc. asserts that this chapter 13 petition was filed in bad faith. There is a distinction between a good faith chapter 13 petition, implicit in section 1307(c), and a good faith chapter 13 plan, an explicit requirement imposed by section 1325(a)(3). See, e.g., In re Smith, 848 F.2d 813, 816 n.3 (7th Cir. 1988).[11]

In In re Lilley, 91 F.3d 491 (3d Cir. 1996), the Third Circuit Court of Appeals held that section 1307(c) must be interpreted as requiring that all chapter 13 cases be filed in good faith:

> It is clear that Chapter 13 contains no explicit good faith requirement. Section 1307(c) provides, however, that Chapter 13 petitions may be dismissed "for cause." 11 U.S.C. § 1307(c). The Seventh, Ninth and Tenth Circuits have held that lack of good faith in filing is sufficient cause for dismissal under section 1307(c). See In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994); In re Gier, 986 F.2d 1326, 1329-30 (10th Cir. 1993). We agree.

Id. at 496.

The Court of Appeals explained that the determination of whether a chapter 13 case was commenced in good faith must be left to the discretion of the bankruptcy court, based upon the "totality of the circumstances"; moreover, the appellate court enumerated certain factors as relevant to this good faith analysis:

---

[11] The 2005 amendments to the Bankruptcy Code have added section 1325(a)(7), which adds the confirmation requirement that "the action of the debtor in filing the petition was in good faith."

15

> As the Seventh Circuit has noted, however, "good faith is a term incapable of precise definition." In re Love, 957 F.2d at 1355. As a result, we believe that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." Id. We therefore join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. In re Love, 957 F.2d at 1355; In re Gier, 986 F.2d at 1329; In re Eisen, 14 F.3d at 470. Factors relevant to the totality of the circumstances inquiry may include, among others, the following: the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. In re Love, 957 F.2d at 1357.

Id.; see, e.g., In re Myers, 2007 WL 1775125, at *3 (3d Cir. 2007); In re Privitera, 2003 WL 21460027 (Bankr. E.D. Pa. 2003).

The movant argues that this bankruptcy filing, the debtor's third since 2005, was undertaken solely to delay its ejectment action and involves a proposed chapter 13 plan that can not be confirmed. While I agree that the debtor's proposed plan does not meet the requirements of 11 U.S.C. § 1325(a), the issue of precluding Central Penn Property Services in prosecuting its ejectment action has been addressed by the granting of the lift stay order.

Considering the totality of the circumstances, the better exercise of discretion is to deny without prejudice the movant's motion to dismiss and to afford the debtor a limited opportunity to confirm a chapter 13 plan, at which time the issue of good faith under section 1325(a)(7) can be considered. Given the purported claims held by unsecured creditors, confirmation of such a plan may be in their interests, rather than dismissal or conversion to chapter 7 under section 1307(c).

At present, the trustee has scheduled a confirmation hearing for January 22, 2008. If the debtor is unable to confirm a chapter 13 plan on that date, this case will be dismissed or converted to chapter 7 under section 1307(c)(5). If dismissed, this court may preclude the debtor from further bankruptcy filings.[12]

An appropriate order shall be entered.

---

[12]In its motion, Central Penn also requests that the debtor be barred from filing future bankruptcy cases. I find that relief premature. While this case is pending, the debtor is not eligible to file another petition. See Matter of Lunsford, 39 B.R. 490 (Bankr. N.D. Ga. 1984). If this case were voluntarily dismissed by the debtor, section 109(g)(2) would impose such a bar for 180 days. And if a party in interest, such as the chapter 13 trustee, were to seek dismissal in the future, Central Penn may appear at that hearing and advocate at that time that the dismissal order contain such a bar.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :       Chapter 13

SUSAN A.R. DUNLOP                              :

    Debtor                            :       Bankruptcy No. 07-14862bf

..............................................

ORDER

..............................................

    AND NOW, this 16th day of October 2007, it is hereby ordered that Central Penn Property Services, Inc.'s motion to dismiss this bankruptcy case with a 180 day bar against future filings is denied without prejudice.

    It is further ordered that Central Penn's alternative motion, seeking relief from the bankruptcy stay to proceed with eviction proceedings under state law against debtor Susan A.R. Dunlop, is granted. The bankruptcy stay is terminated so that the movant may exercise its non-bankruptcy rights to recover possession of the real property located at 445 Devon State Road, Devon, Pennsylvania.

    It is further ordered, to the extent that the co-debtor stay under section 1301 applies to Mrs. Dunlop's husband, James Scott Dunlap, that Central Penn's motion to terminate the co-debtor stay to proceed in its ejectment action against Mr. Dunlop is also granted.

    Finally, it is also ordered that the bankruptcy stay is terminated as to the

debtor's right to assert any defenses to the ejectment action pending against her in the state court.

_____
BRUCE FOX
United States Bankruptcy Judge

Copies to:

Mrs. Susan A.R. Dunlop
Mr. James Dunlop
445 Devon State Road
Devon, PA 19333

David A. Scholl, Esq.
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St Albans Avenue
Newtown Square, PA 19073

Stephen M. Hladik, Esq.
Kerns Pearlstine Onorato & Fath LLP
425 W. Main Street
PO Box 29
Lansdale, PA 19446-0029

William C. Miller, Esq.
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106